1   TODD A. ROBERTS (SBN 129722)
    JESSHILL E. LOVE (SBN 208348)
2   ROPERS, MAJESKI, KOHN & BENTLEY
    1001 Marshall Street, Suite 300
3   Redwood City, CA  94063-2052
    Telephone:    (650) 364-8200
4   Facsimile:    (650) 780-1701

5   Attorneys for Plaintiffs
    THOMAS CIRRITO, AN INDIVIDUAL; AND
6   ATOCHA LAND, LLC, A DELAWARE LIMITED
    LIABILITY COMPANY
7

**E-filing**

ADR

**FILED**

JUL 1 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                     SAN JOSE DIVISION

11

12   THOMAS CIRRITO, an individual; and
     ATOCHA LAND, LLC, a Delaware
13   limited liability company,

14                     Plaintiffs,

15   v.

16   RNC HOLDINGS, LLC, a Nevada limited
     liability company; RONALD
17   BUCHHOLZ, an individual; CHARICE
     FISCHER (also known as CHARICE
18   BUCHHOLZ), an individual; and DOES 1
     through 50, inclusive,
19
20                     Defendants.
21
22
23
24
25
26
27
28

CASE NO. **C08   03476** RS

COMPLAINT FOR:

(1)   VIOLATION OF SECTION 10B AND
RULE 10B-5 OF THE SECURITIES
EXCHANGE ACT OF 1934;
(2)   VIOLATION OF SECTION 12(A) OF
THE SECURITIES ACT OF 1933;
(3)   VIOLATION OF SECTION 17200,
ET SEQ. OF THE CALIFORNIA
BUSINESS AND PROFESSIONS CODE;
(4)   BREACH OF FIDUCIARY DUTY;
(5)   BREACH OF CONTRACT;
(6)   NEGLIGENT
MISREPRESENTATION;
(7)   INTENTIONAL
MISREPRESENTATION;
(8)   CONSPIRACY;
(9)   ALTER EGO;
(10) FRAUD;
(11) CONSTRUCTIVE FRAUD;
(12) RESCISSION OF SECURITY
TRANSACTION PURSUANT TO CORP.
CODE SECTIONS 25501 AND 25401;
(13) RESCISSION OF SALE OF
SECURITIES NOT QUALIFIED FOR
SALE AND RESTITUTION PURSUANT
TO CALIFORNIA CORP. CODE
SECTIONS 25503, 25102, 25110;

**JURY TRIAL DEMANDED**

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5145481.1/TC3

- 1 -

COMPLAINT

1     PLAINTIFFS THOMAS CIRRITO, an individual, and ATOCHA LAND, LLC, a

2   Delaware limited liability company ("Plaintiffs") submit their Complaint against DEFENDANTS

3   RNC HOLDINGS, LLC, a Nevada limited liability company, RONALD BUCHHOLZ, an

4   individual, CHARICE FISCHER (also known as CHARICE BUCHHOLZ), an individual, and

5   DOES 1 through 50 ("Defendants"), as follows.

6                                                    I.

7                  **INTRODUCTION AND OVERVIEW OF THE ACTION**

8          1.      This is an unlimited civil action brought on the following bases:  Violation of

9   Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934; Violation of Section 12(a) of

10   the 1933 Securities Act; Violation of Section 17200 et seq. of the California Business &

11   Professions Code; Breach of Fiduciary Duty; Breach of Contract; Negligent Misrepresentation;

12   Intentional Misrepresentation; Conspiracy; Alter Ego; Fraud; Constructive Fraud; and Violations

13   of California Corporations Code §§ 25401, 25501, 25503, 25110, and 25130.

14         2.      On information and belief, Plaintiffs allege that Defendants created a real estate

15   "Ponzi scheme" to defraud Plaintiff investors of $1,500,000.00 of invested securities.  Defendants

16   misrepresented, among other things, that Defendants intended to develop and sell the property,

17   and that development was being halted by a concern over earthquake faults in the area.  Plaintiffs

18   were lured into this transaction based on the testimony of earlier investors who had received fair

19   returns on their investments.  In fact, Defendants were using the Plaintiffs' investments to pay

20   returns to earlier investors in order to defraud the subsequent investors, perpetuate the "Ponzi

21   scheme," and garner ill-gotten gains for the Defendants' benefit.

22         3.      By this complaint, Plaintiffs seek damages in an amount to be proven at trial, as

23   well as rescission of the unqualified securities.

24                                                   II.

25                          **JURISDICTION AND VENUE**

26         4.      This is an action for damages and a permanent injunction arising out of

27   Defendants' violations of Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934

28   (17 C.F.R. § 240.10b-5) ("Rule 10b-5"); Section 12(a) of the Securities Act of 1933 (15 U.S.C.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    § 771(a)) ("Section 12(a)"); Section 17200 of the California Business & Professions Code;

2    Breach of Fiduciary Duty; Breach of Contract; Negligent Misrepresentation; Intentional

3    Misrepresentation; Conspiracy; Fraud, Constructive Fraud; Alter Ego; and California

4    Corporations Code §§ 25401, 25501, 25503, 25110, and 25130.

5         5.    This Court has jurisdiction over the subject matter of this action pursuant to 28

6    U.S.C. § 1331, federal question jurisdiction, based on the Rule 10b-5 and Section 12(a) claims in

7    this action. This Court has supplemental jurisdiction over the state law claims in this action

8    pursuant to 28 U.S.C. § 1367 because the remaining state law claims are so related to the Rule

9    10b-5 and Section 12(a) claims that they form a part of the same case or controversy and fall

10   within this Court's supplemental jurisdiction.

11        6.    In addition, this Court has jurisdiction over the subject matter of this action

12   pursuant to 28 U.S.C. § 1332(d)(2), diversity of citizenship jurisdiction, because all Plaintiffs are

13   citizens of different states than all Defendants, and because the amount in controversy exceeds

14   $75,000.00.

15        7.    Venue is proper in the Northern District of California pursuant to 28 U.S.C.

16   § 1965(a) because the Defendants transact affairs in this District; pursuant to 28 U.S.C. § 1965(b)

17   because the ends of justice require that the parties residing in any other district be brought before

18   this Court; pursuant to 28 U.S.C. §1291(b) because a substantial part of the events or omissions

19   giving rise to this action occurred in this District; and/or pursuant to 28 U.S.C. § 1391(b) because

20   one or more of the Defendants is subject to personal jurisdiction in this District.

21        8.    The Court has jurisdiction over Defendants RONALD BUCHHOLZ and

22   CHARICE FISCHER because RONALD BUCHHOLZ and CHARICE FISCHER own property

23   in the State of California. Several of the companies they manage, including RNC HOLDINGS,

24   list as their principal address 20 Great Oaks Blvd., Suite 230, San Jose, California.

25        9.    This Court has jurisdiction over Defendant RNC HOLDINGS, LLC ("RNC

26   HOLDINGS") because it maintains an office or a place of business in California, because it

27   regularly conducts business in the State of California, and because it purposefully directed the

28   activities complained of herein toward residents of California (including Plaintiffs) and otherwise

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1     established contacts with California in participating in and otherwise engaging in the acts

2     described below.

3                                          **III.**

4                                      **PARTIES**

5         10.    Plaintiff THOMAS CIRRITO is, and at all times relevant was, a citizen of

6     Virginia. CIRRITO is, and at all times relevant was, a resident of Fairfax County, Virginia.

7     CIRRITO was an investor in the Camino Al Norte project and/or an owner in the Camino Al

8     Norte limited liability company. CIRRITO purchased the unqualified securities from RNC

9     HOLDINGS based on the misrepresentations discussed herein.

10        11.    Plaintiff ATOCHA LAND, LLC, is, and at all times relevant was, a Delaware

11    limited liability company, with its principal place of business in Virginia. Said corporation was

12    an investor in the Camino Al Norte project and/or an owner in the Camino Al Norte limited

13    liability company. Said corporation purchased the unqualified securities from RNC HOLDINGS

14    based on the misrepresentations discussed herein.

15        12.    Defendant RNC HOLDINGS is a Nevada corporation and maintains an office in

16    San Jose, Santa Clara County, California. RNC HOLDINGS, in connection with Defendants

17    RONALD BUCHHOLZ and CHARICE FISCHER, was the issuer of the unqualified securities

18    for investment procured by the Plaintiffs herein.

19        13.    On information and belief, Defendant RONALD BUCHHOLZ is, and at all times

20    relevant was, a citizen of California. Defendant BUCHHOLZ, at all times relevant was, a

21    resident of Santa Clara County, California.

22        14.    On information and belief, Defendant CHARICE FISCHER is, and at all times

23    relevant was, a citizen of California. Defendant FISCHER, at all times relevant was, a resident of

24    Santa Clara County, California.

25        15.    Plaintiffs do not know the true names of Defendants DOES 1 through 50 and

26    therefore sue them by those fictitious names. Plaintiffs are informed and believe and on that basis

27    alleges, that at all times mentioned in this complaint, DOES 1 through 50 were the agents and

28    employees of their co-Defendants, and in performing the acts and omissions alleged in this

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1 | complaint were acting within the course and scope of that agency and employment.

2 | **IV.**

3 | **FACTUAL ALLEGATIONS**

4 | **A.    Defendants' Alleged Real Estate Investment Companies**

5 |       16.    According to the corporate filing with the Nevada Secretary of State for Defendant

6 | RNC HOLDINGS, LLC, Defendants BUCHHOLZ and FISCHER are Managers of the company.

7 |       17.    Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS acted as the "issuers"

8 | of the unqualified securities to Plaintiffs.  Defendants BUCHHOLZ, FISCHER, and RNC

9 | HOLDINGS secured investments from investors, including Plaintiffs, in numerous different

10 | investment vehicles, such as raw land developments and acquisition and development projects.

11 | The investor funds were placed in different positions within the project, inclusive of debt and

12 | equity positions.

13 |       18.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and RNC

14 | HOLDINGS moved or transferred Plaintiffs' investments to additional projects without their

15 | consent and encumbered the projects with additional debt without the consent of Plaintiffs.

16 |       19.    Based on information and belief, Defendants BUCHHOLZ, FISCHER, and RNC

17 | HOLDINGS improperly commingled the investor funds with their own and with those of the

18 | other investors.

19 | **B.    The Camino Al Norte Project**

20 |       20.    In or around November of 2005, Defendants BUCHHOLZ, FISCHER, and RNC

21 | HOLDINGS proposed to Plaintiffs that they become partners in the Camino Al Norte office

22 | condominium investment ("Camino Al Norte project").  The project consisted of the development

23 | of 5.61 acres of raw land located at the intersection of Camino Al Norte and Washburn Road in

24 | North Las Vegas, Nevada.

25 |       21.    Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS had already secured

26 | investors on the project, but had no remaining funding.  In an effort to obtain additional funds,

27 | Defendants offered Plaintiffs a 50% ownership share in Camino Office Condos, LLC in exchange

28 | for $1,500,000.00.  Defendants represented both orally and in writing that Plaintiffs would

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    receive a significant return on their investments.

2        22.    In December of 2005, Defendants executed an Operating Agreement with

3    Plaintiffs. Under the terms of the Operating Agreement, Plaintiffs were to contribute

4    $1,500,000.00 to the project as equity in exchange for a 50% ownership interest in Camino Office

5    Condos, LLC. A true and correct copy of the Operating Agreement sent to Plaintiffs is attached

6    hereto as Exhibit "A" to the Complaint.

7        23.    As part of this Operating Agreement, Defendant BUCHHOLZ took a

8    "development fee" of $250,000.00 and a "building construction management fee" of

9    $150,000.00.

10        24.    A Project Pro Forma was attached as Exhibit B to the Operating Agreement. This

11    Pro Forma indicated that the only capital contribution required of Plaintiffs was the initial

12    $1,500,000.00 in required equity. The Pro Forma also indicated that Plaintiffs would see a Total

13    Project Profit of $1,517,281.00.

14    **C.    The Sale of Unqualified Securities**

15        25.    The investments sold to the Plaintiff investors qualify as "securities" pursuant to

16    Cal. Corporations Code § 25019. Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS

17    qualify as the "issuers" and "broker-dealers" of the securities.

18        26.    Based on information from governmental securities regulation administrations,

19    Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS have neither qualified for nor

20    exempted themselves from qualification of the "securities" in accordance with Cal. Corporations

21    Code 25110.

22        27.    Plaintiffs were unsophisticated real estate investors and relied upon the

23    representations of Defendants BUCHHOLZ and FISCHER. The risks associated with the

24    investments were not explained to the Plaintiff investors, who were unsophisticated and relied

25    upon Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS in making their investment

26    decisions. The reliance of the Plaintiff investors upon the representations, information and

27    promises by Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS was justified based

28    upon the fiduciary role and apparent experience.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

28.     The Plaintiff investors had no say or control over their funds, the nature or types of positions in which they were placed, the addition or removal of investors in the project, the expenditure of the funds for development projects, or the administration of the funds.

29.     Under the Operating Agreement, Defendant BUCHHOLZ took a "development fee" of $250,000.00 and a "building construction management fee" of $150,000.00 as part of the project.

30.     Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS, as the principals of the company, acted as the managing members for the Camino Al Norte project.  Defendants BUCHHOLZ, FISCHER, and RNC HOLDINGS, therefore, held fiduciary duty obligations to the Plaintiff investors that were breached pursuant to the acts set forth herein.

**D.     Defendants Claim There Is an "Earthquake Fault" on the Land to Try to Get Additional Funds from Plaintiffs and Conceal Their Failure to Develop the Property**

31.     By March 2007, nearly 18 months after Plaintiffs transferred the requested $1,500,000.00 on the project, the bank realized that Defendants were not making any progress and demanded that Defendants begin paying the project interest carrying costs out-of-pocket instead of covering the costs from the loan.

32.     On information and belief, in order to obtain additional funds from Plaintiffs, Defendants claimed that the City of North Las Vegas had detected a fault running under the land, and that unless Plaintiffs provided an additional $3,000,000.00, the property could not be developed and would have to be sold.

33.     Based on research regarding faults in the area and information from the City of North Las Vegas, there is no earthquake fault, active or otherwise, in this general area, though there has been some evidence of minor settling in surrounding regions.

34.     Further, the property is surrounded by both concrete and wood buildings, making it highly unlikely that the City would require particular care and expense on a specific 5.61 acre plot in the midst of this development due to earthquake or settling concerns.  Based on information and belief, Plaintiffs surmise that Defendants created the "fault" story as an attempt to obtain additional funds from Plaintiffs.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RCI/5145481.1/TC3

COMPLAINT

35.    In a telephone call in March 2007, Defendant BUCHHOLZ stated that if Plaintiffs did not contribute $3,000,000.00, the property would have to be sold and Plaintiffs would receive no profit on their investments in the project. Plaintiffs refused to contribute the requested $3,000,000.00, as it represented twice their initial investment in the project, and Defendant BUCHHOLZ stated that the sale of the property would close in February 2008.

36.    In March 2008, Plaintiffs had heard nothing from Defendants and contacted them to determine if the sale on the property had closed, as well as to get a copy of the HUD-1 closing statement. Defendant FISCHER told Plaintiffs that Defendant BUCHHOLZ would call them to discuss the status of the property, but refused to provide them a HUD-1 closing statement. Defendant BUCHHOLZ did not call Plaintiffs and Defendant FISCHER did not respond to a subsequent email message.

37.    To date, nothing has been built on the property, and it has not been sold to any other buyer. Based on information and belief, the property has not been listed for sale and no offers have been received thereon.

**E.    Police Raid the Office of BUCHHOLZ and FISCHER to Investigate Allegations of Defendants' Fraudulent Investment Schemes**

38.    In or around July of 2007, the offices of Defendants BUCHHOLZ and FISCHER were raided by both state and federal authorities in connection with a warrant to investigate allegations of fraudulent investment schemes. Due to Plaintiffs' location in Virginia and the lack of press coverage of the raid even locally, Plaintiffs did not learn of the raid until early 2008.

39.    Based on information and belief, Defendants' activities are presently under investigation by state and federal authorities in connection with the allegations of fraudulent investment schemes. Based on information and belief, the pending indictment has not been dismissed.

40.    Based on information and belief, the state and federal authorities seized the contents of the offices of Defendants BUCHHOLZ and FISCHER in connection with the state and federal investigation and the pending indictments.

/ / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**V.**

**COUNT 1:  VIOLATION OF SECTION 10B AND RULE 10B-5 OF THE 1934 ACT**

**(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

41.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 40, inclusive, as though fully set forth herein.

42.    Defendants engaged in a scheme to secure investment funds from Plaintiff in order to provide investment returns to prior investors in the same property, and further sought to obtain additional funds or discharge the project based on a claim of an earthquake fault running through the project. Defendants knew or recklessly disregarded that the statements Defendants made to obtain these funds from Plaintiffs were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

43.    Defendants violated §10(b) and Rule 10b-5 of the 1934 Act in that they:

(a)    Employed devices, schemes and artifices to defraud Plaintiffs;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs by securing investment funds from Plaintiff in order to provide investment returns to prior investors in the same property.

44.    Plaintiffs have suffered damages in that, in reliance on Defendants' representations, their investments were used to provide investment returns to prior investors in the same property rather than being applied toward development of the property as represented. Plaintiffs would not have invested in the property at the rate presented, or at all, if they had been aware that their investments were used to provide investment returns to prior investors in the same property as part of Defendants' scheme.

45.    As a direct and proximate result of Defendants' violation of §10(b) and Rule 10b-5 of the 1934 Act, Plaintiffs have been injured in their business and property in that Plaintiffs'

1   investments have been transferred to prior investors in the same property.  Plaintiffs have incurred

2   and continue to incur legal fees and costs to recover such losses and any potential judgments

3   against Defendants in the pending lawsuits.

4                                              **VI.**

5                 **COUNT 2:  VIOLATION OF SECTION 12(A) OF THE 1933 ACT**

6         **(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

7         46.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 45 inclusive,

8   as though set forth fully herein.

9         47.     Defendants violated 15 U.S.C. § 77l in that they:

10              (a)     Offered to sell a security by oral communication; and,

11              (b)     Made untrue statements of material facts and omitted to state material facts

12  necessary in order to make the statements made, in light of the circumstances under which they

13  were made, not misleading.

14        48.     Plaintiffs have suffered damages in that, in reliance on Defendants'

15  representations, their investments were used to provide investment returns to prior investors in the

16  same property rather than being applied toward development of the property as represented.

17  Plaintiffs would not have invested in the property at the rate presented, or at all, if they had been

18  aware that their investments were used to provide investment returns to prior investors in the

19  same property as part of Defendants' scheme.

20        49.     As a direct and proximate result of Defendants' violation of §12(a) of the 1933

21  Act, Plaintiffs have been injured in their business and property in that Plaintiffs' investments have

22  been transferred to prior investors in the same property rather than being applied toward

23  development of the property as represented.  Plaintiffs have incurred and continue to incur legal

24  fees and costs to recover such losses and any potential judgments against Defendants in the

25  pending lawsuits.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs

26  are entitled to restitution of all monies invested in the project, with interest thereon.

27  ///

28  ///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**VII.**

## COUNT 3:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.

**(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

50.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 49 inclusive, as though set forth fully herein.

51.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants and DOES 1-50 as alleged herein constituted unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200, et seq.

52.    Plaintiffs agreed to invest, and in fact did invest with Defendants based upon Defendants' representations and misrepresentations that they were contributing to the development of land purchased by Defendants, and that Plaintiffs would receive a rate of return on their investments.  Plaintiffs were lured into transactions believing that Defendants were applying Plaintiffs' funds toward development of the property.  Instead, Defendants used the funds contributed by Plaintiffs to pay investment returns to the prior investors in the same property in an attempt to perpetuate the fraud upon the other investors and obtain larger contributions from them.  Defendants' deception constitutes a fraudulent business practice under the California Unfair Competition Law in that Defendants failed to disclose these fraudulent practices to investors prior to investment.

53.    As a result of the foregoing, pursuant to California Business & Professions Code §17203, Plaintiffs seek an Order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to take investments from investors.  Plaintiffs additionally request an Order of this Court requiring the payment or return of any monies wrongfully acquired, saved, or retained by Defendants by means of such acts of unfair competition so as to restore to Plaintiffs any and all monies which were acquired and obtained by means of such acts of unfair competition and/or as may be necessary to prevent the use or employment of any practices which constitute unfair competition, as well as imposing an

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    asset freeze or a constructive trust over such monies.

2         54.     Therefore, Plaintiffs seek an Order of this Court for all appropriate available

3   remedies under California Business & Professions Code §17203.

4                                      **VIII.**

5                   **COUNT 4:  BREACH OF FIDUCIARY DUTY**

6    **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER and DOES 1-50)**

7         55.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 inclusive,

8   as though set forth fully herein.

9         56.     Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER had a special

10   relationship with Plaintiffs, in that Defendants assumed a fiduciary position in relation to the

11   investors as investment advisers, trustees of the accounts, and managing partners of projects,

12   ventures, and the limited liability company. As such, Defendants were fiduciaries as to Plaintiffs.

13   Defendants breached their fiduciary duty to Plaintiffs by failing to make full disclosure of all

14   material facts concerning the transactions that might have affected Plaintiffs' investment

15   decisions. The Plaintiffs' losses were caused by and have resulted directly and proximately from

16   the action, misrepresentations, and omissions of Defendants.

17         57.     As fiduciaries, Defendants owed a duty of utmost care, integrity, honesty and

18   loyalty toward Plaintiffs. Defendants breached their fiduciary duty to Plaintiffs by, among other

19   things, misrepresenting that Plaintiffs were contributing to the development of land purchased by

20   Defendants, and that Plaintiffs would receive a rate of return on their investments. Plaintiffs were

21   lured into transactions believing that Defendants were applying Plaintiffs' funds toward

22   development of the property. Instead, Defendants used the funds contributed by Plaintiffs to pay

23   investment returns to the prior investors in the same property in an attempt to perpetuate the fraud

24   upon the other investors and obtain larger contributions from them.

25         58.     As a direct and proximate result of the breach of fiduciary duty by Defendants,

26   Plaintiffs have been injured in their business and property in that Plaintiffs' investments have

27   been transferred to prior investors in the same property rather than being applied toward

28   development of the property. Plaintiffs have incurred and continue to incur legal fees and costs to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    recover such losses and any potential judgments against Defendants in the pending lawsuits.

2         59.    The Defendants' conduct as described above, involved malice, oppression and

3    fraud, and such conduct was clearly despicable.  Such despicable and fraudulent conduct was

4    plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

5    ratified by them, and by the Defendant corporation, RNC HOLDINGS.  Accordingly, the Court

6    should assess punitive damages against these Defendants.

7                                          IX.

8                       **COUNT 5:  BREACH OF CONTRACT**

9    **(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

10        60.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 59 inclusive,

11   as though set forth fully herein.

12        61.    In or about December 2005, Defendants RNC HOLDINGS, BUCHHOLZ, and

13   FISCHER entered into an Operating Agreement with Plaintiffs.  A true and correct copy of the

14   Operating Agreement is attached hereto as Exhibit "A" to the Complaint.

15        62.    As part of this Operating Agreement, Defendants BUCHHOLZ, FISCHER, and

16   RNC HOLDINGS, as managers of Camino Al Norte, LLC, agreed, among other things, that the

17   business of the company would be to develop the subject property for resale (Section 5).

18        63.    Defendants breached this Operating Agreement with Plaintiffs by, among other

19   things, misrepresenting that Defendants intended to develop the subject property in accordance

20   with the Operating Agreement.  Plaintiffs were lured into transactions believing that Defendants

21   were applying Plaintiffs' funds toward development of the property.  Instead, Defendants used the

22   funds contributed by Plaintiffs to pay investment returns to the prior investors in the same

23   property in an attempt to perpetuate the fraud upon the other investors and obtain larger

24   contributions from them.

25        64.    As a direct and proximate result of the breach of contract by Defendants, Plaintiffs

26   have been injured in their business and property in that Plaintiffs' investments have been

27   transferred to prior investors in the same property rather than being applied toward development

28   of the property.  Plaintiffs have incurred and continue to incur legal fees and costs to recover such

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  losses and any potential judgments against Defendants in the pending lawsuits.

2      65.    The Defendants' conduct as described above, involved malice, oppression and

3  fraud, and such conduct was clearly despicable.  Such despicable and fraudulent conduct was

4  plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

5  ratified by them, and by the Defendant corporation, RNC HOLDINGS.  Accordingly, the Court

6  should assess punitive damages against these Defendants.

7                                          X.

8              **COUNT 6:  NEGLIGENT MISREPRESENTATION**

9  **(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

10     66.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 65,

11  inclusive, as though set forth fully herein.

12     67.    Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER, by and through their

13  agents, officers, directors, and employees, represented and promised Plaintiffs that Defendants

14  intended to develop the subject property, and that Plaintiffs would receive a return on their

15  investment.  Plaintiffs were lured into transactions believing that Defendants were applying

16  Plaintiffs' funds toward development of the property.  Instead, Defendants used the funds

17  contributed by Plaintiffs to pay investment returns to the prior investors in the same property in

18  an attempt to perpetuate the fraud upon the other investors and obtain larger contributions from

19  them.

20     68.    Defendants made these misrepresentations to induce Plaintiffs into purchasing the

21  subject investments and securities from the company Defendants.

22     69.    At the time the Defendants made these written and oral misrepresentations,

23  Defendants knew or should have known that they were not true.  Defendants knew or should have

24  known that they could not fulfill these promises.

25     70.    Plaintiffs relied upon these written and oral statements in purchasing the

26  investments and securities, without any knowledge Defendants had, in fact, engineered to apply

27  Plaintiffs' investment funds to provide a return to prior investors on the same property rather than

28  to develop the property.  Had Plaintiffs known the truth, Plaintiffs would never have purchased

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RCI/5145481.1/TC3                          - 14 -                          COMPLAINT

1   the investments and securities from Defendants.

2       71.    As a direct and proximate result of the representations of Defendants, Plaintiffs

3   have suffered damages in that, in reliance on Defendants' representations, their investments were

4   used to provide investment returns to prior investors in the same property rather than being

5   applied toward development of the property.  Plaintiffs would not have invested in the property at

6   the rate presented, or at all, if they had been aware that their investments were used to provide

7   investment returns to prior investors in the same property as part of Defendants' scheme.

8       72.    The Defendants' conduct as described above, involved malice, oppression and

9   fraud, and such conduct was clearly despicable.  Such despicable and fraudulent conduct was

10  plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

11  ratified by them, and by the Defendant corporation, RNC HOLDINGS.  Accordingly, the Court

12  should assess punitive damages against these Defendants.

13                              **XI.**

14              **COUNT 7:  INTENTIONAL MISREPRESENTATION**

15  **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER, and DOES 1-50)**

16      73.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 72,

17  inclusive, as though fully set forth herein.

18      74.    Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER, by and through their

19  agents, officers, directors, and employees, represented and promised Plaintiffs that Defendants

20  intended to develop the subject property, and that Plaintiffs would receive a return on their

21  investment.  Plaintiffs were lured into transactions believing that Defendants were applying

22  Plaintiffs' funds toward development of the property.  Instead, Defendants used the funds

23  contributed by Plaintiffs to pay investment returns to the prior investors in the same property in

24  an attempt to perpetuate the fraud upon the other investors and obtain larger contributions from

25  them.

26      75.    At the time that the Defendants made these written and oral representations to

27  Plaintiffs, they knew that they were not true.  Defendants in fact had no intention of fulfilling

28  these promises and instead used this deception to trick Plaintiffs into purchasing investments and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   securities when Defendants had no intention of developing the subject property and providing a

2   return on Plaintiffs' investments.  Instead, Defendants intended to and did use the funds

3   contributed by Plaintiffs to pay investment returns to the prior investors in the same property in

4   an attempt to perpetuate the fraud upon the other investors and obtain larger contributions from

5   them.

6          76.    Plaintiffs relied upon these written and oral statements in purchasing the

7   investments and securities, without any knowledge Defendants had, in fact, engineered to apply

8   Plaintiffs' investment funds to provide a return to prior investors on the same property rather than

9   to develop the property.  Had Plaintiffs known the truth, Plaintiffs would never have purchased

10  the investments and securities from Defendants.

11         77.    As a direct and proximate result of the representations of Defendants, Plaintiffs

12  have suffered damages in that, in reliance on Defendants' representations, their investments were

13  used to provide investment returns to prior investors in the same property rather than being

14  applied toward development of the property.  Plaintiffs would not have invested in the property at

15  the rate presented, or at all, if they had been aware that their investments were used to provide

16  investment returns to prior investors in the same property as part of Defendants' scheme.

17         78.    The Defendants' conduct as described above, involved malice, oppression and

18  fraud, and such conduct was clearly despicable.  Such despicable and fraudulent conduct was

19  plainly conducted by the officers, directors, and/or managing agents of these Defendants and was

20  ratified by them, and by the Defendant corporation, RNC HOLDINGS.  Accordingly, the Court

21  should assess punitive damages against these Defendants.

22                                            **XII.**

23                              **COUNT 8:  CONSPIRACY**

24  **(Against Defendants BUCHHOLZ, FISCHER, RNC HOLDINGS, and DOES 1-50)**

25         79.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 78,

26  inclusive, as though set forth fully herein.

27         80.    On information and belief, at least as early as November 2005, and perhaps earlier,

28  Defendants, and each of them, knowingly and willfully conspired and agreed among themselves

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    to sell 50% ownership in Camino Office Condos, LLC to Plaintiffs for the concealed purpose of

2    obtaining funds to pay investment returns to prior investors on the same project. The purpose of

3    this payment of investment returns to prior investors was to obtain larger contributions from said

4    investors in perpetuation of Defendants' scheme.

5         81.    Defendants' "Ponzi scheme" involved the sale of 50% ownership to Plaintiffs in

6    exchange for a representation that Defendants would develop the subject property, and provide

7    Plaintiffs a return on their investment. Plaintiffs were lured into transactions believing that

8    Defendants were applying Plaintiffs' funds toward development of the property. Instead,

9    Defendants used the funds contributed by Plaintiffs to pay investment returns to the prior

10   investors in the same property in an attempt to perpetuate the fraud upon the other investors and

11   obtain larger contributions from them.

12        82.    Defendants RNC HOLDINGS, RONALD BUCHHOLZ, and CHARICE

13   FISCHER did the acts and things alleged herein pursuant to, and in furtherance of, the conspiracy

14   and above-alleged agreement.

15        83.    Plaintiffs are informed and believe and thereon allege that the last overt act in

16   pursuance of the above-described conspiracy occurred on or about March 17, 2008, when the

17   Defendants concealed the fact that they were not attempting to sell the property.

18        84.    Plaintiffs did not have knowledge of the above-described conspiracy at the time it

19   was taking place. Plaintiffs could not have discovered the above-described conspiracy in the

20   exercise of reasonable diligence because Plaintiffs were not sophisticated investors, because

21   Plaintiffs relied on Defendants upholding their fiduciary duty to Plaintiffs, and because

22   Defendants concealed their activities between several parties and fictional entities. Plaintiffs

23   actually discovered the above-described conspiracy in or about March 2008, when they realized

24   that the fault story was an attempt to get additional funds from Plaintiffs and was an attempt to

25   avoid inquiry into the fact that Defendants had been misusing Plaintiffs investment funds rather

26   than developing the property.

27        85.    As a proximate result of the wrongful acts herein alleged, Plaintiffs have been

28   generally damaged through the loss of their investments, the interest thereon, and the legal costs

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5145481.1/TC3                              - 17 -                                    COMPLAINT

1    and fees necessary to pursue a judgment in this action.

2        86.    In doing the acts and things alleged herein, Defendants acted with malice and

3    fraud as defined in Cal. Civil Code section 3294(c) in that they acted willfully and with intent to

4    cause injury to the Plaintiffs and in conscious disregard of Plaintiffs' rights.  Accordingly, the

5    Court should assess punitive damages against these Defendants.

6                                    **XIII.**

7                            **COUNT 9:  ALTER EGO**

8        **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER and DOES 1-50)**

9        87.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 86,

10   inclusive, as though fully set forth herein.

11       88.    On information and belief, there exists, and at all times herein mentioned there

12   existed, a unity of interest and ownership between Defendants RNC HOLDINGS, BUCHHOLZ,

13   and FISCHER, such that any individuality and separateness between Defendants RNC

14   HOLDINGS, BUCHHOLZ, and FISCHER has ceased, and Defendants RNC HOLDINGS is the

15   alter ego of Defendants BUCHHOLZ and FISCHER.  Defendants BUCHHOLZ and FISCHER

16   used assets of the company for their personal uses, caused assets of the company to be transferred

17   to them without adequate consideration, undercapitalized the corporate investments, and

18   withdrew funds from the company's bank accounts for their own personal use.  Defendants

19   BUCHHOLZ and FISCHER used funds from RNC HOLDINGS for their own personal

20   residences and vehicles and/or applied funds from RNC HOLDINGS accounts in furtherance of

21   Defendants' "Ponzi scheme," as described herein.

22       89.    On information and belief, Defendant RNC HOLDINGS is, and at all times herein

23   mentioned was, a mere shell, instrumentality, and conduit through which Defendants

24   BUCHHOLZ and FISCHER carried on their fraudulent investment business in the corporate

25   name, exercising complete control and dominance of said business to such an extent that any

26   individuality or separateness of Defendant RNC HOLDINGS and Defendants BUCHHOLZ and

27   FISCHER does not, and at all times herein mentioned did not, exist.

28       90.    Therefore, Plaintiffs request that this Court disregard the corporate formality of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Defendant RNC HOLDINGS and treat it as the alter ego of Defendants BUCHHOLZ and

2   FISCHER.

XIV.

**COUNT 10:  FRAUD**

**(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER, and DOES 1-50)**

6       91.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 90,

7   inclusive, as though fully set forth herein.

8       92.     Defendants failed to disclose the facts alleged herein, all of which were within

9   their knowledge at the time that Plaintiffs rendered their investments.  Defendants made false and

10  misleading representations to Plaintiffs concerning the application of investment funds to the

11  subject property as alleged herein, Defendants' request for additional capital, and the fact that

12  Defendants would benefit in a manner undisclosed to Plaintiffs.  Defendants took affirmative

13  actions in order to prevent Plaintiffs from discovering the their failure to apply the funds toward

14  the property, including, but not limited to, misrepresentations by omission of material facts

15  regarding problems with development of the property.

16      93.     Defendants knew that the representations alleged herein were false and misleading

17  at the time they were made.

18      94.     Defendants made the aforesaid representations with an intent to defraud and

19  intentionally mislead Plaintiffs, and to induce Plaintiffs to act in reliance on these representations,

20  including causing Plaintiffs to place investments with Defendants for the development of the

21  Property.

22      95.     Plaintiffs were unaware of the falsity and intentionally misleading nature of the

23  aforementioned representations, including, but not limited to the misrepresentations by omission

24  of material facts, and justifiably acted in reliance upon the aforesaid representations.  Plaintiffs'

25  reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with

26  Plaintiffs and Plaintiffs, therefore, had a responsibility to fully disclose all information concerning

27  the Camino Al Norte project to Plaintiffs in a full and truthful manner.

28      96.     As a direct and proximate result of Defendants' false and intentionally misleading

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   representations and concealment of the facts as alleged herein, Plaintiffs have been damaged and

2   are entitled to compensation in an amount to be determined according to proof.  Such damages

3   include, but are not limited to, the loss of investment obtained by fraud and loss of interest on the

4   investment capital.

5       97.    Furthermore, as a result of Defendant's intentionally false and misleading

6   representations, Plaintiffs are entitled to exemplary and punitive damages.

7                                        XV.

8                        **COUNT 11: CONSTRUCTIVE FRAUD**

9   **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER, and DOES 1-50)**

10      98.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 97,

11   inclusive, as though fully set forth herein.

12      99.    In their respective roles as the issuers of the unqualified securities and as the

13   managing members of Camino Office Condos, LLC and the Camino Al Norte project, Defendants

14   RNC HOLDINGS, BUCHHOLZ, and FISCHER individually and collectively owed to Plaintiffs

15   certain duties to make the fullest disclosure of all material facts that might affect Plaintiffs'

16   decision to provide money to RNC HOLDINGS, BUCHHOLZ, and FISCHER for use in the

17   Camino Al Norte project.

18      100.   Defendants failed to disclose the facts alleged herein, all of which were within

19   their knowledge at the time that Plaintiffs rendered their investments.  Defendants made false and

20   misleading representations to Plaintiffs concerning the application of investment funds to the

21   subject property as alleged herein, Defendants' request for additional capital, and the fact that

22   Defendants would benefit in a manner undisclosed to Plaintiffs.  Defendants took affirmative

23   actions in order to prevent Plaintiffs from discovering the their failure to apply the funds toward

24   the property, including, but not limited to, misrepresentations by omission of material facts

25   regarding problems with development of the property.

26      101.   Plaintiffs were unaware of the falsity and intentionally misleading nature of the

27   aforementioned representations, including, but not limited to the misrepresentations by omission

28   of material facts, and justifiably acted in reliance upon the aforesaid representations.  Plaintiffs'

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with

2   Plaintiffs. Defendants, therefore, had a responsibility to fully disclose all information concerning

3   the Camino Al Norte project to Plaintiffs in a full and truthful manner.

4       102.   At all times mentioned herein, Plaintiffs were unaware of the existence of the

5   aforementioned material misrepresentations and omissions of material fact regarding the Camino

6   Al Norte project and Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER's use of the

7   monies conveyed to Defendants for the Camino Al Norte project.

8       103.   As a result of Defendants' failure to make full disclosure of material facts as well

9   as Defendants' misrepresentation of material facts that might have affected Plaintiffs' decision to

10  provide money to Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER for use in the

11  Camino Al Norte project, Plaintiffs did, in fact, transfer the funds to Defendants BUCHHOLZ,

12  FISCHER, and RNC HOLDINGS, have been damaged, and are now entitled to compensation in

13  an amount to be determined according to proof. Such damages include, but are not limited to,

14  actual damages, interest thereon, punitive damages, attorney's fees, and other damages according

15  to proof.

16                                          **XVI.**

17  <u>**COUNT 12: RESCISSION BASED ON MATERIAL MISREPRESENTATION AND**</u>
    <u>**SECURITIES TRANSACTION PURSUANT TO CAL. CORP. CODE SECTIONS 25501**</u>
18  <u>**AND 25401**</u>

19  **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER, and DOES 1-50)**

20      104.   Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 103,

21  inclusive, as though fully set forth herein.

22      105.   On or about November 2005, Defendants RNC HOLDINGS, BUCHHOLZ, and

23  FISCHER, offered and sold to Plaintiffs 50% of the membership interest in Camino Office

24  Condos, LLC, the limited liability company of the Camino Al Norte project, in exchange for

25  $1,500,000.00. At that time, Defendants represented that they intended to develop the project and

26  that Plaintiffs would receive a return on their investments. Rather than applying Plaintiffs'

27  investment toward development of the property, Defendants used Plaintiffs' investment to pay off

28  prior investors in the same property in order to obtain larger contributions from said prior

1    investors.

2    106.    Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER, in connection with

3    the sale of securities to Plaintiffs regarding the Camino Al Norte project (See Exhibit "A"), failed

4    to disclose that Plaintiffs may be subject to supplemental capital obligations in the future.

5    Plaintiffs were told that they had no obligation beyond their initial investment.  Plaintiffs were

6    informed that no further capital contribution would be "required" of them both verbally and in

7    writing by Defendants BUCHHOLZ and FISCHER.  Exhibit B to the Operating Agreement, titled

8    "Project Pro Forma," states, "Required Equity:  $1,500,000."  At the time that Defendants

9    BUCHHOLZ, FISCHER, and RNC HOLDINGS solicited and received Plaintiffs' investments,

10    however, Defendants were aware of the fact that the project was severely undercapitalized.

11    Defendants failed to disclose that information to Plaintiffs.

12    107.    Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER, in connection with

13    the sale of securities to Plaintiffs regarding the Camino Al Norte project (See Exhibit "A"),

14    misrepresented the actual return or "profit" to Plaintiffs.  The Project Pro Forma states: "Total

15    Project Profit: $1,517,281."  To date, Plaintiffs have received no return on investment from the

16    Camino Al Norte project.  To the contrary, Plaintiffs have been requested to make an additional

17    capital contribution of $3,000,000.00 to the project.

18    108.    Defendants RNC HOLDINGS, BUCHHOLZ, and FISCHER misrepresented to

19    Plaintiffs that they were buying into a viable investment opportunity for an office condominium

20    project.  The reality, however, was the that Defendants RNC HOLDINGS, BUCHHOLZ, and

21    FISCHER, through the investment scheme, had already extracted any potential profits from the

22    potential investment for themselves through the "Ponzi scheme" described above.  Plaintiffs were

23    then left with a project that was not viable since it was "under water," meaning that the debt on

24    the project so far outweighed the value that development prospects were no longer possible

25    absent an extreme pro forma or forecasted loss.

26    109.    As a result of the material misrepresentations and omissions, Plaintiffs are entitled

27    to rescind the above-described purchases of membership interest in Camino Office Condos, LLC.

28    110.    Plaintiffs will tender to Defendants their membership interest in Camino Office

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Condos, LLC, for the above-described securities as purchased from Defendants and on which to

2   date Plaintiffs have received $0 in total income.

3       111.    Therefore, Plaintiffs seek an Order of this Court for the appropriate available

4   remedy of rescission and return of Plaintiffs' investment capital with interest from the date of the

5   investment pursuant to Cal. Corp. Code §§ 25501 and 25401.

6                                           **XVII.**

7   **COUNT 13:  RESCISSION OF SALE OF SECURITIES NOT QUALIFIED FOR SALE
    AND RESTITUTION OF CONSIDERATION PAID PURSUANT TO CAL. CORP. CODE**
8                   **SECTIONS 25503, 25102(F), AND 25110**

9       **(Against Defendants RNC HOLDINGS, BUCHHOLZ, FISCHER, and DOES 1-50)**

10      112.    Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 111,

11  inclusive, as though fully set forth herein.

12      113.    On or about February 2005, Defendants BUCHHOLZ, FISCHER, and RNC

13  HOLDINGS, offered and sold to Plaintiffs and investors a total of $1,500,000.00 of membership

14  interest in Camino Office Condos, LLC.  Defendants were the issuers of the investments and

15  engaged in the trading of such securities.  The Operating Agreement for the Camino Al Norte

16  project is attached hereto as Exhibit "A".

17      114.    This sale constituted an issuer transaction in that it was an offering of membership

18  interest for capitalization purposes for Camino Office Condos, LLC.  The issuers directly

19  benefited from Plaintiffs' investment of securities and received a portion of the investments as the

20  issuer of the security.  At the time of Plaintiffs' acquisition and membership interests and

21  investment in Camino Office Condos, LLC, the sale was subject to qualification, was not exempt

22  from qualification, and was not, and to the date of this Complaint, has not been qualified as any

23  kind of securities transaction with the Commissioner of Corporations.

24      115.    As a result of the above-described acts, Defendants are liable to Plaintiffs, who are

25  entitled to and hereby do, rescind the above-described purchase.  Plaintiffs will tender before

26  entry of judgment to Defendants their membership interests in the above-described security as

27  purchased from Defendants and on which to date Plaintiffs have received $0 in total income.

28      116.    Plaintiffs have been damaged in an amount to be proven at trial. Therefore,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Plaintiffs seek an Order of this Court for all appropriate available remedies under California

Corporations Code §§ 25503, 25102(f), and 25110.

### XVIII.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.     For rescission of the purchase and recovery of investment capital as the original consideration paid for the securities at issue;

2.     For interest on the value of the original consideration at the legal rate from the date of purchase and transfer of the consideration;

3.     For costs of suit herein incurred;

4.     For recovery of attorneys' fees;

5.     For punitive damages; and

6.     For such other and further relief as the Court may deem proper.

Dated: July 18, 2008                                 ROPERS, MAJESKI KOHN & BENTLEY

By: _____

TODD A. ROBERTS
JESSHILL E. LOVE
Attorneys for Plaintiffs
THOMAS CIRRITO, AN INDIVIDUAL;
AND ATOCHA LAND, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5145481.1/TC3

- 24 -

COMPLAINT

1

### DEMAND FOR JURY TRIAL

Plaintiffs THOMAS CIRRITO and ATOCHA LAND, LLC hereby demand a jury trial in this matter.

Dated: July 18, 2008

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____

TODD A. ROBERTS
JESSHILL E. LOVE
Attorneys for Plaintiffs
THOMAS CIRRITO, AN INDIVIDUAL;
AND ATOCHA LAND, LLC, A
DELAWARE LIMITED LIABILITY
COMPANY

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**EXHIBIT A**

## OPERATING AGREEMENT OF CAMINO OFFICE CONDOS, LLC

THIS LIMITED LIABILITY COMPANY AGREEMENT ("Agreement") is made and entered into as of the _____ of August 2005, by RONALD BUCHHOLZ of Nevada and CHARICE BUCHHOLZ of California as its managers ("Manager(s)") and RNC Holdings, LLC, a Nevada LLC and ATOCHA LAND, LLC of Delaware as its members ("Member(s)").

### R E C I T A L S

A.     Camino Office Condos, LLC ("Company") was formed as a Nevada limited liability company on August _____, 2005, by the filing of Articles of Organization with the Secretary of State of the State of Nevada.

B.     The Members desires to provide for certain agreements governing the business and affairs of the Company.

### A G R E E M E N T S

1.     Name. The name of the Company is Camino Office Condos, LLC; provided that the Managers may, from time to time, change the name of the Company to any name permitted by the Nevada Limited Liability Company Act, as the same may be amended from time to time ("Act").

2.     Principal Place of Business. The principal place of business of the Company shall be 19 Avenida Sorrento, Henderson, NV 89011.

3.     Registered Office and Registered Agent. The Company's initial registered office shall be at the office of its registered agent at 19 Avenida Sorrento, Henderson, NV, 89011. The name of the Company's registered agent at such address is Ronald Buchholz. The Manager may, from time to time, change the registered office and the registered agent of the Company.

4.     Term. The term of the Company shall be perpetual, unless the Company is earlier dissolved in accordance with the provisions of this Agreement.

5.     Business of the Company. The business of the Company shall be to (a) acquire that certain parcel of real property located in North Las Vegas, Nevada more particularly described on Exhibit A attached to this Agreement (the "Property"), (b) own, develop, operate, lease, finance, refinance, market and sell the Property, and (c) engage in any activities necessary, incidental or related to the foregoing purposes. The Company shall be a limited liability company only for the purposes specified in this Section 5 (the "Permitted Activities"). The Company shall not engage in any activity or business other than the Permitted Activities, and no Manager or Member shall have any authority to hold itself out as a general agent of any other Manager or Member in any other business or activity.

6.    <u>Ownership and Distributions</u>. As of the date hereof, RNC HOLDINGS, LLC owns 50% of the Company and THOMAS CIRRITO owns 50% of the Company. All distributions will be made to the Members in proportion to their ownership of interests in the Company. No owner shall be admitted as a Member of the Company without the express written consent of all other Members and the Managers.

7.    <u>Management of the Company</u>.

(a)    <u>Administrative Manager – Day-to-Day Management</u>. The day-to-day business and affairs of the Company shall be managed by the Company's "<u>Administrative Managers</u>". The initial Administrative Managers of the Company shall be Ron Buchholz and Charice Buchholz. An Administrative Manager may be removed or replaced by the affirmative vote of a majority in number of the Managers other than the Administrative Manager, except that Ron Buchholz cannot be removed as the Administrative Manager as long as he remains a guarantor of the financing related to the acquisition and construction of the property or any other of the Company's liabilities and those liabilities total over $1,350,000. If the Administrative Manager resigns, a replacement Administrative Manager may be appointed by the affirmative vote of a majority in number of the Managers other than the resigned Administrative Manager. Subject to the other terms of this Agreement, including Section 7(c) below, the Administrative Manager shall have the duty, responsibility and authority, of behalf of the Company, to, in accordance with each applicable Approved Budget:

(i)    negotiate and execute on behalf of the Company all instruments and documents (1) necessary to carry out the ordinary business of the Company (including, without limitation, checks, drafts and contracts which are terminable by the Company within 30 days and without penalty), or (2) approved by the Managers;

(ii)    oversee and manage the development of the Property;

(iii)    purchase liability and other insurance to protect the Company's Property and business;

(iv)    open bank accounts in the name of the Company;

(v)    temporarily invest Company funds in short term insured accounts to the extent not required to pay the current expenses of the Company's business;

(vi)    employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(vii)    act as the "tax matters partner" pursuant to Code Section 6221;

(viii)    pay all expenses of the Company, including, without limitation, taxes, insurance, property management fees, legal, accounting and other professional services fees and ordinary maintenance expenses, all in accordance with each applicable Approved Budget; and

(ix)    do and perform all other acts as may be necessary or appropriate to the conduct of the day-to-day operations of the Company in accordance with each applicable Approved Budget.

(x)    execute all closing documentation and loan documentation necessary for the acquisition of land and related financing or for the closing of condominium units on behalf of the Managers. Ronald Buchholz **OR** Charice Buchholz are authorized to sign all documents with a single signature.

(b)    Budget Preparation and Approval Process.

(i)    Submission of Annual Budgets. On or before June 31 of each calendar year, the Administrative Manager shall prepare and submit to the Managers a proposed budget for the Company's operations for the immediately following calendar year. (each, a "Proposed Budget"). The initial Proposed Budget for the Company's operations during the period beginning on the date of this Agreement and ending on June 30, 2007 is attached hereto as Exhibit B. Before any Proposed Budget is implemented, the Managers will be required to approve the Proposed Budget as provided in Section 7(b)(ii) below. A proposed amendment to an Approved Budget will also require the approval of the Managers as provided in Section 7(b)(ii) below.

(ii)    Review Period. The Managers shall have thirty (30) days within which to review a Proposed Budget (or any amendment to an Approved Budget proposed by the Administrative Manager). Unless a Manager objects in writing to the Proposed Budget (or an amendment to an Approved Budget) within such thirty (30) day period, the Proposed Budget (or amendment to an Approved Budget) shall be deemed approved by the Managers and shall be deemed an "Approved Budget" hereunder. The Proposed Budget attached hereto as Exhibit B is hereby approved by the Managers and shall be an Approved Budget. Until any Proposed Budget or amendment to an Approved Budget is adopted, (1) the existing Approved Budget will remain in effect, and the Administrative Manager will be authorized to act in accordance with the previously existing Approved Budget.

(c)    Managers. Except to the extent specifically delegated to the Administrative Manager pursuant to Section 7(a) above, the right to manage, control and conduct the business and affairs of the Company shall be vested solely in the Managers, and all decisions regarding the operation of Company and its business and affairs shall be made by the affirmative vote of a majority in number of the Managers (subject to the voting requirements in Section 6.2 below). The Managers shall devote such time and effort to the Company and its business as is appropriate to conduct the business of the Company in an effective manner, and will protect the interests of every member equally, acting with the highest integrity. However, the Managers shall not be required to devote full time efforts to the Company. Any vote that is deadlocked shall

3

be resolved by Ron Buchholz casting the deciding vote. Decisions requiring the affirmative consent of the Managers shall include, but not be limited to, the following:

(i)    pay or commit to pay any extraordinary expense of the Company not authorized in an Approved Budget;

(ii)    incur any indebtedness, commitment, obligation or liability other than as set forth in an Approved Budget;

(iii)    cause the Company to enter into any agreement or contract which is not terminable by the Company within 30 days and without penalty;

(iv)    sell all or substantially all of the Property or acquire or sell any other real property;

(v)    causing the Company to borrow money, whether secured or unsecured, from banks, other lending institutions, any Member, any Affiliate of a Member or any other source;

(vi)    cause the Company to encumber or grant security interests in its assets to secure repayment of borrowed sums;

(vii)    amend the Articles of Organization, except that any amendments required under the Act to correct any inaccuracy in the Articles of Organization or to reflect a change in the Members may be filed at any time by the Administrative Manager;

(viii)    authorize the Company to make an assignment for the benefit of creditors of the Company, file a voluntary petition in bankruptcy or consent to the appointment of a receiver for the Company or its assets; or

(ix)    take any other action requiring the consent of the Managers under the terms of this Agreement.

(d)    Company Bank Accounts. The Administrative Manager shall cause the Company to open an interest bearing business checking account. The Administrative Managers shall be authorized to sign checks in the Company's name to the extent any such check (i) is for the payment of an expense reflected in an Approved Budget or (ii) is necessary to the operations of the Company.

7.1    Limitations on Liability; Indemnity. No Manager or Member, or its or their Affiliates (an "Actor"), shall be liable to the Company or to the other Managers or Members for actions taken in good faith by the Actor in connection with the Company or its business; provided that an Actor shall in all instances remain liable for acts in breach of this Agreement or which constitute bad faith, fraud, willful misconduct or gross negligence (except to the extent the Company is compensated for the same by insurance coverage maintained by the Company). The

4

Company, its receiver or trustee shall indemnify, defend and hold harmless each Actor, to the extent of the Company's assets (without any obligation of any Member to make contributions to the Company to fulfill such indemnity), from and against any liability, damage, cost, expense, loss, claim or judgment incurred by the Actor arising out of any claim based upon acts performed or omitted to be performed by the Actor in connection with the business of the Company, including without limitation attorneys' fees and costs incurred by the Actor in the settlement or defense of such claim; provided that no Actor shall be indemnified for claims based upon acts performed or omitted in breach of this Agreement or which constitute bad faith, fraud, willful misconduct or gross negligence.

7.2    <u>Reimbursement of Manager Expenses</u>. Each Manager shall be entitled to reimbursement from the Company for costs incurred by it in connection with the performance of its duties hereunder, but only to the extent such expenditures are set forth in an Approved Budget.

7.3    <u>Incompetence by Manager</u>. In the event that either of the Managers are proved to be ineffectively managing the project, management of the Company shall be granted to Thomas Cirrito. In order to be proved ineffective, it must be demonstrated that the project is experiencing (i) cost overruns in excess of 125%, not including materials cost increases that are consistent with market rates, any modifications to the project plans that are determined to increase marketability and/or sales revenue or changes to the specifications of the project that could not have been reasonably foreseen by the Managers.

8.    <u>Fees</u>. The following fees shall be paid to certain Managers, certain Members and certain of their respective Affiliates:

(a)    <u>Development Fee</u>. In connection with the infrastructure development of the Property and the development of the office condominium buildings, the Company shall pay a development fee of $250,000 (the "<u>Development Fee</u>") to Meridian Partners, LLC a Nevada Real Estate Development Company owned by Ronald Buchholz. The Development Fee shall be payable as follows: $125,000 upon the close of escrow and the balance to be paid in 5 equal monthly installments of $25,000 over the remaining five month period. The final payment shall be withheld until permits have been issued for both grading and vertical construction

(b)    <u>Building Construction Management Fee</u>. In connection with the construction of the Property, the Company shall pay a Building Construction Management Fee of $150,000 ("the Building Construction Management Fee") to Meridian Partners, LLC a Nevada Real Estate Development Company owned by Ronald Buchholz. The Building Construction Management Fee shall be payable as follows: $75,000 upon issuance of the preliminary grading permit for the buildings and the balance to be paid in 5 equal monthly installments of $15,000 over the remaining five month period. The final payment shall be withheld until all of the buildings have been issued Certificates of Substantial Completion.

5

8.1    <u>Dealing with the Company</u>. Each Manager and any of its Affiliates shall have the right to contract or otherwise deal with the Company for the rendition of services and other purposes, and to receive payments and fees from the Company in connection therewith as the Managers shall determine; provided that (a) such payments or fees, other than those specifically covered in Section 8, are comparable to the payments or fees that would be paid to unrelated persons providing the same property, goods or services to the Company; (b) such agreements are terminable upon sixty (60) days' notice, without penalty; and (c) all such agreements are fully disclosed to the Managers prior to their effectiveness. A Manager may provide accounting and other administrative services to the Company and in such event shall be reimbursed for the cost of providing such services, provided that such cost shall not exceed the prevailing rate or cost for such services in the North Las Vegas, Nevada metropolitan area.

9.    <u>Powers and Authority of the Managers</u>. Without limiting the generality of Paragraph 7, all decisions relating to the management and control of the conduct of the business of the Company and its affairs shall be made by the Managers, including, but not limited to, decisions relating to any of the following: (i) the selection of representatives of the Company to serve on the management, supervisory or other governing boards or bodies of any company or other organization in which the Company owns an interest; (ii) the hiring and termination of employees of the Company; (iii) distributions to the Members; (iv) the opening of bank accounts, the making of loans to any third party, the incurrence or refinancing of indebtedness of the Company, and the encumbering of Company property; (v) the selection of attorneys, accountants, appraisers and agents; and (vi) the entry into or performance of, on behalf of the Company, all other contracts, agreements and other undertakings and the taking of any other action as may be necessary or advisable in the judgment of the Manager or incident to carrying out in the business of the Company. Any contract, agreement, instrument or other document to which the Company is a party and which is duly authorized by the Managers may be signed by either of the Managers or an authorized officer of the Company, and no other signatures shall be required.

10.    <u>Officers</u>. The Managers may appoint such officers and agents as they shall deem necessary, who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Managers.

11.    <u>Indemnification</u>. The Company (to the extent of all of its assets and without any obligation on the part of any Members to contribute funds to the Company, but subject to any lien or security interests held by any person) shall indemnify and save harmless each Manager and each Member from any loss or damage incurred by it by reason of any act performed by it for and on behalf of the Company and in furtherance of the Company's interest, provided such act or acts were done in good faith and without malfeasance, gross negligence or willful misconduct on the part of the Managers or Members. Except as otherwise expressly and specifically provided herein, a Member shall have no obligation or liability to any other Member or, except as otherwise expressly provided by the Act, to any other person or entity, in such Member's capacity as a Member.

6

12.     <u>Dissolution</u>. The Company shall be dissolved upon the occurrence of either of the following events: (a) by the written agreement of the Members; or (b) the sale of substantially all of the assets of the Company.

13.     <u>Inconsistencies</u>. In the event of any inconsistency between this Agreement and the Act, to the extent permitted by applicable law, the terms of this Agreement shall govern.

14.     <u>Applications of Nevada Law</u>. This Agreement and its interpretation shall be governed exclusively by its terms and by the laws of the State of Nevada.

15.     <u>Amendments</u>. This Agreement may not be amended except in writing by a majority in interest of the Members.

16.     <u>Heirs, Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the Members and their heirs, legal representatives, successors and assigns.

17.     <u>Creditors</u>. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

18.     <u>Disclosures</u>.

1.     After the close of escrow, Camino Office Condos, LLC shall enter into a Development Agreement and a Construction Management agreement with Meridian Partners, LLC to manage the design, approval, and development of the property and the general business of the LLC.

2.     Ronald Buchholz, a manager of the Company, hereby discloses that he is the Managing Member of RDB Development, LLC.

3.     Ronald Buchholz, a manager of the Company, hereby discloses that he is the Managing Member of Meridian Partners, LLC.


[Signature Pages to Follow]


7

IN WITNESS WHEREOF, the undersigned has executed this Agreement as of the dated first written above.

MANAGERS:

_____
Ronald Buchholz

_____
Charice Buchholz

MEMBERS:

_____
Ronald Buchholz, Manager
RNC Holdings, LLC

_____
Charice Buchholz, Manager
RNC Holdings, LLC

_____
Thomas Cirrito, Manager
Atocha Land, LLC

## EXHIBIT A

## PROPERTY LEGAL DESCRIPTION

That portion of the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section 33, Township 19 South, Range 61 East, M.D.M. described as follows:

Parcel 1 of that certain parcel map on file in File 100 of Parcel Maps, Page 92, in the Office of the County Recorder of Clark County, Nevada.

## EXHIBIT B
## PROJECT PRO FORMA

**Camino al Norte**
**North Las Vegas, NV**
6/15/2005

| | | | |
|---|---|---|---|
| Land Area | | 5.61 | acres |
| Land Cost psf of Land Area | $ 15.75 | | |
| Building Area | | 53,700 | g.s.f. |
| Coverage | | 0.22 | |

**Development ProForma**

| | | | | |
|---|---|---|---|---|
| Land Cost | | $ 3,848,853 | $ | 71.67 |
| | | | $ | - |
| Closing Cost | | 0 | | |
| | | | $ | - |
| Approval Soft Cost | | 0 | | |
| Total Land Cost | | $ 3,848,853 | $ | 71.67 |
| Interest Carry | 5.75% | 277,636 | $ | 5.17 |
| Architectural Design | | 200,000 | $ | 3.72 |
| Engineering Design | | 100,000 | $ | 1.86 |
| Design Review Fees | | 10,000 | $ | 0.19 |
| Legal & Zoning | | 15,000 | $ | 0.28 |
| Real Estate Taxes | | 20,000 | $ | 0.37 |
| Developer Fee | | 250,000 | $ | 4.66 |
| Signage | | 10,000 | $ | 0.19 |
| Miscellaneous | | 75,000 | $ | 1.40 |
| Contingency | | 100,000 | $ | 1.86 |
| Site Improvement Cost | | 268,500 | $ | 5.00 |
| Shell Building Cost | | 3,490,500 | $ | 65.00 |
| Marketing | | 15,000 | $ | 0.28 |
| Site Maintenance | | 10,000 | $ | 0.19 |
| Utility Connection Fees | | 100,000 | $ | 1.86 |
| Plan Review Fees | | 25,000 | $ | 0.47 |
| Permit Fees | | 150,000 | $ | 2.79 |
| Construction Management Fees | | 150,000 | $ | 2.79 |
| Insurance | | 35,000 | $ | 0.65 |
| Construction Finance Fees | | 90,000 | $ | 1.68 |
| Accounting | | 45,000 | $ | 0.84 |
| Total Construction Cost | | $5,436,636 | $ | 101.24 |

10

| | | |
|---|---|---|
| Total Project Cost | $ 9,285,489 | $ 172.91 |

### Building Sales Analysis

| | | |
|---|---|---|
| Building Sales | $11,545,500 | $ 215.00 |
| Sales Commissions (6%) | -692,730 | -12.90 |
| Closing Costs (10 Closings) | -50,000 | -0.93 |
| Net Revenue | $10,802,770 | $ 201.17 |

### Financing & Investment Summary

| | |
|---|---|
| Total Loan Amount | $7,428,391 |
| Loan to Value | 80% |
| Required Equity | $ 1,500,000 |
| Total Project Profit | **$1,517,281** |

11

JS 44 (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| THOMAS CIRRITO, ATOCHA LAND LLC | RNC HOLDINGS, INC., ET AL. |

| (b) County of Residence of First Listed Plaintiff  Santa Clara<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|

| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>TODD A. ROBERTS, JESSHILL E. LOVE<br>ROPERS, MAJESKI, KOHN & BENTLEY<br>1001 Marshall Street<br>Redwood City, CA 94063 (650) 364-8200 | Attorneys (If Known)<br><br>ADR<br><br>E-filing |
|---|---|

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

C08  03476  RS

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury — Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 370 Other Fraud | [ ] 650 Airline Regs. | [ ] 840 Trademark | [X] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities – Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities – Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. Section 1, et seq.; 17 C.F.R. Section 240.10B-5; 15 U.S.C. Section 771(a)

Brief description of cause:
Investment Ponzi Scheme, Unqualified Sale of Securities

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE

SIGNATURE OF ATTORNEY OF RECORD

7/18/08

American LegalNet, Inc.
www.FormsWorkflow.com